IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| Respondent, | * |
| v. | *   PWG-14-cr-0006 |
| | PWG-16-cv-3198 |
| ALIMAMY BARRIE, | * |
| Defendant-Petitioner. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

On June 5, 2015, Petitioner Alimamy Barrie was convicted of two counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of identity theft in violation of 18 U.S.C. § 1028A. Verdict Form, ECF No. 99. At trial, the Government adduced evidence that Barrie, along with associates, obtained personal identifying information belonging to an individual named Frank Gray and used it to impersonate Gray and access his 401(k) managed by Fidelity Investments and attempt to transfer his funds to an account that they opened in his name. Am. Presentence Investigation Report ¶¶ 6–13, ECF No. 113. Prior to Barrie's conviction in this Court, he pled guilty in the Eastern District of Virginia to similar charges involving another victim, *see United States v. Barrie*, Plea Agreement, No. 11-cr-476-GBL (E.D.V.A. Oct. 3, 2011), ECF No. 24, and he engaged in the conduct that led to the subsequent conviction while on pretrial release in Eastern District of Virginia case, Presentence Investigation Report ¶ 16. I sentenced Barrie to 112 months and 1 day for the offenses and for committing them while on pretrial release. Judgment 2, ECF No. 114. Barrie filed a Fed. R. Crim. P. 33 Motion for New Trial, Pet.'r's Mot. New Trial, ECF No. 103, which I denied, Mem. Op. & Order, ECF No. 109; appealed his

conviction to the Court of Appeals for the Fourth Circuit, Notice of Appeal, ECF No. 116, which affirmed the conviction, ECF No. 137; and filed a Petition for Certiorari, which the Supreme Court of the United States denied, *Barrie v. United States*, 136 S. Ct. 1691 (2016) (mem.). He then filed a Motion to Vacate Conviction and Sentence pursuant to 28 U.S.C. § 2255 in this Court, in which he argues that he received ineffective assistance of counsel at trial, during sentencing, and on direct appeal.[1] Pet., ECF No. 139. The Motion is fully briefed, Pet'r's Mem., ECF No. 139-1; Resp't's Opp'n, ECF No. 142; Pet'r's Reply, ECF No. 143, and no hearing is necessary, *see* Loc. R. 105.6 (D. Md.); *Rules Governing § 2255 Cases*, R. 8(a). Because I do not find that Barrie received objectively unreasonable representation or that a reasonable probability exists that the outcome of his trial, sentencing, or appeal would have been different had counsel represented Barrie in the manner he now prefers, I will deny the Motion.

## Background

While Barrie was in custody as a result of the Eastern District of Virginia case, Special Agent Cristopher Guest of the United States Secret Service and Special Agent James Conner of

---

[1] In correspondence during the pendency of his Motion, Barrie notified the Court that he requested that Attorney Matthew Robinson raise an argument that he should receive a lighter sentence under the Amended Sentencing Guidelines based on changes to the sentence enhancements associated with intended loss but that Robinson failed to do so. ECF No. 144. In effect, Barrie is attempting to supplement his Motion. A § 2255 motion must be filed within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 225(f)(1). Here, the judgment became final on April 18, 2016, when the Supreme Court denied Barrie's Petition for Writ of Certiorari, *Barrie*, 136 S. Ct. at 1691; *see also Clay v. United States*, 537 U.S. 522, 527 (2003) (finality attaches when the Supreme Court denies a petition for a writ of certiorari). Barrie did not raise this issue until May 26, 2017. Under Fed. R. Civ. P. 15(c), a defendant may supplement a § 2255 motion after the limitations period concludes if the claims asserted are "tied to a common core of operative facts" as those raised in the original motion. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). Barrie's argument concerning application of the Sentencing Guidelines is unrelated to his other sentencing arguments, which concern alleged double jeopardy and application of § 3553(a) factors. Accordingly, I will not address the issue that Barrie raises in his belated correspondence. *See Evans v. United States*, Nos. WDQ-11-civ-13362012, WDQ-05-cr-0259, WL 1078096, at *4 n.8 (D. Md. Mar. 29, 2012) (setting forth standard for relation back to § 2255 motions).

2

the Federal Bureau of Investigation interviewed him in connection with their investigation of the wire fraud committed against Frank Gray. Trial Tr. Vol. II, at 170:9–16, ECF No. 131. Before beginning the interview, Agents Guest and Conner provided Barrie with a form that advised him of his *Miranda* rights, and Barrie signed the form. Pretrial Hr'g Tr. 165:13–166:3, Resp't's Opp'n Ex. C., ECF No. 142-3. I previously held that this constituted a voluntary and knowing waiver of his *Miranda* rights. *Id.* at 174:5–10. During the interview that followed, Barrie admitted that he called Fidelity Investments while pretending to be Gray. Trial Tr. II, at 176:5–20. Barrie said that he made the calls from a phone belonging to Patricia Williams, the mother of his friend Ishmael Bakarr. *Id.* at 176:21–177:1. Barrie also told the investigators that he obtained Gray's personal information from an individual in New York who he called "Kante" and created an ACH link[2] to transfer funds from the Fidelity Investments account to an account that he and his associates opened in Gray's name. *Id.* at 177:8–15, 183:3–7.

At trial, Agent Guest testified that he visited the home of an individual named Laron Greenfield because an IP address from a device used to engage in the fraudulent activity at issue in the case was associated with his house. Trial Tr. Vol. IV, at 16:10–24, ECF No. 133. There, Guest showed Greenfield four photographs of Barrie and one of another subject, and Greenfield indicated that he recognized Barrie, who he explained lived at or frequented the house next door to his. *Id.* at 17:15–18:5, 19:24–23:17. During Guest's testimony, the Government also introduced a chart that summarized the relationship between various IP addresses in the case and residences associated with each address, Trial Tr. Vol. III, at 127:13–18, ECF No. 133, and Guest, who helped create the chart, testified as to his role in distilling information from several

---

[2] An "ACH link" is an abbreviation for "automated clearing house," which is an electronic financial-services network. *Automated Clearing House*, Wikipedia.org (Apr. 26, 2017, 1:36 AM), https://en.wikipedia.org/wiki/Automated_Clearing_House.

3

trial exhibits into the chart and was available for cross-examination, Trial Tr. Vol. IV, at 59:23–61:17.

Based in part on the facts gleaned from Agents Guest and Conner's interview with Barrie and Greenfield's testimony concerning Barrie's presence at the house where online aspects of the fraud were perpetrated, the jury convicted Barrie on all counts. Verdict Form. I sentenced Barrie to 112 months and 1 day for the offenses. Judgment 2. This sentence was comprised of two concurrent 64-month sentences for the two wire-fraud counts and a consecutive 24-month sentence for the identity-theft count. *Id.* For each count, I also assessed an additional consecutive sentence because Barrie committed the offenses while on pretrial release. *Id.* These additional sentences were for twelve months for each of the wire-fraud counts and one day for the identity theft count. *Id.*

Following sentencing, Barrie filed a Fed. R. Crim. P. 33 Motion for New Trial in which he argued, among other things, that (1) his statements during his interview with Agents Guest and Conner should have been excluded as involuntary; and (2) that the summary chart should not have been admitted based on Agent Guest's testimony because he only reviewed but did not personally create the chart. Pet'r's Mot. New Trial ¶¶ 3, 6. With respect to both arguments, I rejected the Motion as rehashing arguments raised, heard, and resolved in the Government's favor in pretrial motions and at trial respectively. Mem. Op. & Order 6, 8.

On appeal, Barrie argued that the Court erred by (1) admitting evidence of Greenfield's out-of-court identification; (2) admitting evidence of Barrie's prior fraud conviction in the Eastern District of Virginia; and (3) applying a sentence enhancement that was not justified by the evidence. *United States v. Barrie*, 629 F. App'x 541, 542 (4th Cir. 2015) (per curiam). The court rejected all three arguments and affirmed the conviction. *Id.* at 544.

## Standard of Review

28 U.S.C. § 2255(a) permits a prisoner to file a motion to vacate, set aside or correct his sentence on the ground that it "was imposed in violation of the Constitution or laws of the United States." The prisoner must prove his case by a preponderance of the evidence. *Brown v. United States*, Civil No. DKC-10-2569 & Criminal No. DKC 08-529, 2013 WL 4562276, at *5 (D. Md. Aug. 27, 2013). If the court finds for the prisoner, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## Discussion

Barrie challenges his conviction on Sixth Amendment grounds, arguing that he received ineffective assistance of counsel during trial, sentencing, and on appeal. Pet'r's Mem. 3. Ineffective-assistance-of-counsel claims are governed by *Strickland v. Washington*, 466 U.S. at 668 (1984), and its progeny. To satisfy the *Strickland* standard, a petitioner must prove: (1) "that counsel's performance fell below an objective standard of reasonableness"; and (2) that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 669, 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citation omitted). This presumption is so strong that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered "fundamentally unfair" by counsel's affirmative omissions or errors. *Id.* at 696.

5

Importantly, counsel has a duty to "conduct a 'reasonably substantial investigation' " into possible lines of defense, but a reviewing court must accord "deference to counsel's informed decisions, [and] strategic choices must be respected . . . if they are based on professional judgment." *Id.* at 680 (quoting *Washington v. Strickland*, 693 F.2d 1243, 1252 (5th Cir. 1982)). A petitioner may raise a Sixth Amendment claim based on trial counsel's "fail[ure] to contact and interview important prospective witnesses, especially when they were readily available or had been identified by the defendant prior to trial." *Huffington v. Nuth*, 140 F.3d 572, 580 (4th Cir. 1998). But "failure to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance." *Id.*

On appeal, it is presumed "that appellate counsel 'decided which issues were most likely to afford relief on appeal.' " *United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014) (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). Accordingly, constitutionally defective appellate representation only occurs where appellate counsel "ignore[s] issues" that were "clearly stronger than those presented." *Id.* at 829.

Appellate Representation

Barrie argues that his appellate counsel erred by failing to raise the arguments that (1) his statements made during the interview with Agents Guest and Conner should have been excluded as involuntary; and (2) that the summary chart should have been excluded because Agent Guest's introduction of the item violated the Confrontation Clause since he reviewed the contents of the chart but did not create it. Pet'r's Mem. 21, 24. Barrie believes that these arguments "were clearly stronger than those presented to the Fourth Circuit." *Id.* at 20. I do not share Barrie's assessment. For one thing, I twice rejected the very arguments that he now faults appellate counsel for failing to raise on appeal. Pretrial Hr'g Tr. 174:5–10 (holding that Barrie was

6

advised of his rights and that his statements were made voluntarily); Aug. 28, 2014 Ltr. Order, ECF No. 84 (allowing admission of summary chart); Mem. Op. & Order 6, 8. I did so not off-the-cuff, but with the benefit of briefing and oral argument on the interview admissions and after recessing the trial for further consideration of the summary-chart issue after hearing argument on the topic. Def.'s Mot. to Suppress, ECF No. 12; Pretrial Hr'g Tr. 160:15–165:14 (oral argument on interview admissions); Trial Tr. III, at 118:20–138:17 (oral argument on chart issue). Under these circumstances, appellate counsel did not provide ineffective assistance by exercising the tactically-sound judgement to refrain from rehashing an argument twice rejected by the court below after considered review.

Moreover, Barrie's arguments simply are not supported by the record. As to Barrie's admissions during his interview, he argues that the "[a]gents did not inform [him] of his rights, including his right to remain silent and the right to counsel" and that he felt pressured to confess to the crimes because "the agents relayed to [him] that the interview was part of [his] continued cooperation for which he was to receive immunity protection." But, to the contrary, Agent Conner testified at a pretrial motions hearing that he provided Barrie with a FD-395 Advice of Rights form that set forth Barrie's *Miranda* rights and that he also explained the form to Barrie and "read it to him slowly and carefully." Pretrial Hr'g Tr. 135:10–137:4. After hearing Agent Conner read the form to him and having had the opportunity to read it, Barrie signed the document, thereby waiving his rights. *Id.* at 137:9–20. Agents Guest and Conner did not indicate that anything in the Eastern District of Virginia prosecution depended on his cooperation during the interview. *Id.* at 141:13–142:8. Rather, when at one point Barrie appeared to be under the impression that the interview was part of previous opportunities he had to cooperate with the Government, Agent Conner "stopped him . . . and said that's not what we're here to

discuss today. That case has been done for some time. This is Agent Guest. Today, he has some questions about some things that are going on in New York." *Id.* at 139:25–140:4. This evidence led me to conclude that Barrie's statements were made voluntarily, and Barrie has offered no new evidence or authority to support a contrary conclusion.

As for the summary chart, Barrie argues that its introduction violated the Confrontation Clause because Agent Guest could not testify as to the contents of the chart and thereby serve as a vehicle for its introduction because he "did not create or author the chart and the creator of the chart was not called as a witness." Pet'r's Mem. 26. The availability of a mere surrogate for cross-examination, who lacks personal knowledge of the circumstances surrounding the creation of a document constituting a testimonial statement does not satisfy a defendant's confrontation rights. *See Bullcoming v. New Mexico*, 564 U.S. 647, 658–63 (2011). In *Bullcoming*, the individual who performed a BAC test was not available to testify at trial. *Id.* at 659. Instead, an analyst who did not observe the performance of the test was available to testify as an expert on BAC tests. *Id.* at 657. The Court held that the analyst was an insufficient substitute because his testimony "could not convey what [the test administrator] knew or observed" nor "expose any lapses or lies on the certifying analyst's part." *Id.* at 661–662. Such is not the case here. Government counsel readily admitted at trial that he created the charts in the first instance. Trial Tr. Vol. III, at 128:7–8. But afterwards, he and Agent Guest went "through each data point in the chart and compare[d] it to the exhibits the Government . . . put into evidence . . . and confirm[ed] each and every data point and ma[d]e changes where necessary." *Id.* at 128:10–13. Agent Guest was no mere surrogate for the author of the summary chart in this case. He personally reviewed the chart with the lawyer who created it to make sure that it accurately reflected the data contained in other admitted evidence and worked with the lawyer to make

changes where necessary. Based on his contribution to the creation of the chart, Agent Guest had more than sufficient personal knowledge to convey how the summary chart was made, and cross-examination could have exposed any errors committed in creating the document or falsehoods conveyed during direct examination. Barrie has furnished no evidence to suggest that a Confrontation-Clause claim would have borne fruit on appellate review.

Barrie has not carried his burden of demonstrating that he suffered from inadequate assistance of counsel on appeal.

## Trial Representation

The gravamen of Barrie's claim with respect to his representation at trial is that counsel failed to interview and call key witnesses. First, he argues that trial counsel should have interviewed and called Ishmael Bakarr, but he provides no indication as to what Bakarr would have testified to. Pet'r's Mem. 12, Barry [sic] Aff. ¶ 3, Pet'r's Mem. Ex. 1, ECF No. 139-2 [hereinafter Barrie Aff.]. He also argues that Chris Johnson would have rebutted Greenfield's testimony putting Barrie at the house where fraudulent online activity occurred by testifying that it was he and not Barrie with whom Greenfield spoke on one occasion. Pet'r's Mem. 12–13; Barrie Aff. ¶ 3. Greenfield, however, did not testify to a single encounter but, rather, to repeated contacts with Barrie at the house in question. *See* Trial Tr. Vol. II, 94:24–101:7, 115:24–116:14. Accordingly, Johnson's anticipated testimony would not have effectively rebutted Greenfield's. Next, Barrie argues that Patricia Williams should have been interviewed and called as a witness because it was her phone that was used to make the calls to Fidelity Investments. Pet'r's Mem. 13; Barrie Aff. ¶ 3. Clearly, a phone is susceptible to use by owners and non-owners alike, and Barrie offers no explanation for how Williams's testimony would have cast doubt on the evidence suggesting that he made the calls in question. Barrie also argues that a certain James

9

Dremer should have testified because he was present during Barrie's interrogation, Pet'r's Mem. 13, but he provides no details concerning what aspect of the interrogation Dremer would have testified about or how the testimony would have aided his case. Finally, Barrie argues that his wife, Mariama Bah, should have testified because she was present during a search of 4807 Daisy Creek Terrace. Pet'r's Mem. 13. The Government disputes that any search was conducted at that address, Resp't's Opp'n 18, and Barrie does not rebut this contention in his Reply. Moreover, Barrie again provides no indication of what in particular Bah would have testified to.

Even if Barrie had provided information about any of the proposed witnesses that suggested their ability rebut any of the evidence adduced at trial, he faces a significant barrier to establishing the second *Strickland* prong. During his interview with Agents Guest and Conner, Barrie admitted to calling Fidelity Investments and impersonating Frank Gray. The admissions gleaned during the interview by themselves largely establish the elements of the crimes for which he was convicted. Trial Tr. Vol. II, at 176:5–20. Even if the proposed witnesses could poke holes in some of the finer details of the Government's case, there is no inkling in Barrie's briefing that any of the witnesses were up to the significant task of casting doubt on his own admissions. Thus, it is highly unlikely that the outcome of the trial would have been different had any of these individuals testified.

Accordingly, I find that trial counsel did not provide ineffective assistance at trial.

### Sentencing Representation

Barrie argues that he received ineffective assistance of counsel at sentencing because counsel failed to object on double-jeopardy grounds to the sentence enhancements imposed due to the fact that Barrie committed the offense while on pretrial release. Pet'r's Mem. 15–17. A statutory sentence enhancement applies when an individual is convicted of an offense committed

while on release.  18 U.S.C. § 3147.  Because Barrie was convicted of three offenses committed while on pretrial release, I imposed sentence enhancements pursuant to § 3147 for each offense and ordered that they run consecutive to his sentence out of the Eastern District of Virginia. Judgment 2.  In accordance with the Sentencing Guidelines, the fact that Barrie committed the offenses while on pretrial release also factored into the sentence I imposed for the underlying crime.  U.S. Sentencing Guidelines (USSG) § 3C1.3.  Barrie suggests that application of these enhancements resulted in "multiple punishments based on one fact—the instant offense was committed while Mr. Barrie was on bond from a case out of the Eastern District of Virginia," which he believes constitutes double jeopardy.  This argument lacks merit and therefore cannot be the basis for an ineffective-assistance-of-counsel claim.  First, as a general matter, the Fourth Circuit has recognized that "[t]he Supreme Court has 'historically . . . found double jeopardy protections inapplicable to sentencing proceedings' and has refused to construe sentence enhancements as additional punishments."  *United States v. Fitzgerald*, 435 F.3d 484, 487 (4th Cir. 2006) (quoting *Monge v. California*, 524 U.S. 721, 728 (1998)).  Moreover, the Fourth Circuit has specifically upheld the practice of double counting whereby a court applies both statutory and related Guidelines enhancements—such as 18 U.S.C. § 3147 and USSG § 3C1.3— based the same conduct.  *See United States v. Reevey*, 364 F.3d 151, 158 (4th Cir. 2004) ("Double counting is generally authorized unless the Guidelines expressly prohibit it.").  Counsel cannot be faulted for failing to make a non-meritorious argument.

Barrie also contends that counsel failed to argue for a reduced sentence based on the 18 U.S.C. § 3553(a) factors.  *Id.* at 17–19.  But counsel addressed several of the § 3553(a) factors in the Defense Sentencing Memorandum.  Specifically, the Memorandum urged the Court to take into account the fact that Barrie was born outside the country; the effect of his mother's death on

his life; and his promise as an entrepreneur as relevant components of his history and background under § 3553(a)(1). Defense Sentencing Mem. 11–12, ECF No. 110. The Memorandum also urged the Court to consider the nonviolent nature of the crime, the fact that other suspects in the case had not been prosecuted, and the likelihood of a lighter sentence having an adequate deterrent effect as relevant to the adequacy of the sentence under § 3553(a)(2). *Id.* 12–15. Finally, the Memorandum pointed to sentences in similar cases in the District of Maryland in an effort prevent sentencing disparities discouraged under § 3553(a)(6). *Id.* at 15–16. Counsel covered similar ground at the Sentencing hearing. Sentencing Hr'g Tr. 493, 497–99, 501–04, Resp't's Opp'n Ex. H., ECF No. 142-8. Accordingly, counsel was not deficient in addressing the § 3553(a) factors.

In sum, I find that Barrie received constitutionally adequate representation at sentencing.

## **ORDER**

Accordingly, for the reasons stated, it is this 7th day of June, 2017, hereby ORDERED that Defendant's Motion to Vacate Conviction and Sentence pursuant to 28 U.S.C. § 2255, ECF No. 139, IS DENIED.

                                                    /S/
                                        Paul W. Grimm
                                        United States District Judge